**John J. Kinnegar, Appellant, v. Estate of John D. Kinnegar, Deceased, Appellee.**

**Gen. No. 5557.**

ADMINISTRATION OF ESTATES—*what admissions not binding.* An attorney appointed to defend an estate against a claim presented by the administrator thereof is not competent to make an admission which will bind such estate.

Contested claim in court of probate. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912.

ROBERT CARR and BUTTERS & ARMSTRONG, for appellant.

JAMES J. CONWAY, for appellee.

MR. JUSTICE MORTON W. THOMPSON delivered the opinion of the court.

Appellant, who is a son and administrator of the estate of John D. Kinnegar, deceased, filed a claim against said estate in the Probate Court of La Salle county, for $992.75. An administrator was appointed to defend, and upon a trial $106.50 was allowed. Claimant appealed to the Circuit Court, where after claimant amended his claim by adding a new item of $100 and eliminating several items and reducing another, which made a claim of $532.09, a trial was had before a jury, which returned its verdict in favor of the estate, and claimant appeals.

The amended claim consisted of four items, viz:

First. July and August, 1908, 651 bushels and
    18 pounds oats @ 50¢ ..................$325.59
Second. February, 1908, to one year's interest
    paid for deceased ...................... 100.00
Third. February, 1909, to one year's interest
    paid for deceased ...................... 100.00

Fourth.    July 24, 1909, to cash paid for lines
    and bits for deceased....................    6.50

                Total.....................$532.09
    In the summer of 1908, John D. Kinnegar, a farmer
living near Utica, in La Salle county, contracted one
thousand bushels of oats at fifty cents per bushel, to
be delivered ˙to the purchaser, Van R. St. John, at
Utica, by a certain time.    About the expiration of the
time for delivery, St. John testifies that deceased told
him, while making said delivery, that the time was
short, and that his son John (the claimant here) had
some oats and he would deliver them to the applied
on the contract; that later John delivered seven loads,
six hundred and fifty-one bushels and eighteen pounds,
on the contract, and identified six tickets introduced
in evidence as representing loads delivered to him by
claimant, totaling said amount, and that he paid de-
ceased for all of it, and he was to settle with claimant
for them.    He testified that the tickets were in his
handwriting.    On cross-examination he could not re-
member who delivered all the oats represented by the
tickets, but was sure claimant hauled one.    It was the
custom to deliver tickets to the teamster who brought
the load in.    St. John did not know whose they were
or where they were from except what the teamster
told him.    Claimant offered in evidence the page of a
book, which St. John testified was copied from his
books by him some time after the transaction.    His
books had been burned at the time of the trial, and
claimant insists that this copy from his original books
should have been admitted in evidence.    It was but a
copy made from his books some time after the orig-
inal entries in his books, and was not competent, and
the court was right in sustaining the objection to its
introduction in evidence.    St. John was asked:
    Question, ''Now when you weigh a load of oats
that is brought into the warehouse, did you have any

way of determining who it was that furnished the oats?"

Answer, "Only what the teamster told me."

Question, "Did you rely upon what the teamsters who delivered the oats told you at that time? Do you know of your own knowledge, basing it upon that, as to how many oats were delivered of the John D. Kinnegar oats, and how many of the John J. Kinnegar oats upon this one thousand bushel contract?"

Defendant objected and the objection was properly sustained. On cross-examination St. John was asked:

Question, "You say that this bunch of oats, these oats were hauled by John J. Kinnegar and his teams. What man, besides John J. Kinnegar himself, hauled a single load of these oats?"

Answer, "I cannot tell you."

Question, "How do you know it was his teams?"

Answer, "Because they told me it was."

Appellee, who asked the question, moved to exclude the answer and the court correctly excluded it. The question was "How do you *know.*" His answer was simply the evidence from which he concluded it was claimant's teams, and was not responsive to the question asked.

Two brothers, a sister, and a brother-in-law testified on behalf of the defense concerning this transaction. Some of this testimony tended to show that about seven hundred bushels were delivered by deceased on this contract, and what claimant had delivered, if any, had been repaid by his father. From all the evidence, we cannot say that the jury were not warranted in finding as they did.

As to the next two items, Mr. Haeberle, assistant cashier of the First National Bank, testified that claimant paid them interest for two years on a note for $2,000 which deceased had assumed payment of. He knew nothing as to where claimant obtained the money, only the fact of his paying it. This was all of the evidence as to these items, and fails to establish appellant's claim against the estate, as a volun-

tary payment thereof would not entitle him to judgment. But appellant insists that as counsel for defendant admitted one interest payment of $100 he was clearly entitled to that much. The abstract does not show such admission, but we have examined the record and find that Mr. Conway, the attorney for the defendant, in his opening statement to the jury, said:

"There is one item he claims he paid for his father in February, 1908, of One Hundred Dollars on a certain trust deed that his father had. * * * He claims credit for One Hundred dollars that he paid as interest for his father, on his father's mortgage. We know that in February, 1909, a year later, when John Kinnegar was administrator of the estate and acting as his father's representative, he did go in and pay one hundred dollars to the National City Bank. Where he got the money, whether the old gentleman gave it to him or where he got it from was not disclosed on the last trial."

Mr. Carr, "You are in error; in February, 1909, John Kinnegar was living."

Mr. Conway, "I should have said that on February 9th—when he got the money—he went into the bank and paid it, and we will not dispute it. Oscar Haeberle will be here; he will testify John Kinnegar, Jr., paid One Hundred Dollars to be applied upon his father's note as interest. We are not disputing that. When Mr. Haeberle says it is true, we think it is true or he would not say it, because Mr. Haeberle is an honest, decent citizen and would not have any object in misrepresenting, and would not if he did. We know that is a fact; we know he paid that One Hundred Dollars, but how he got the One Hundred Dollars Mr. Haeberle don't know, nor does any party in the bank know. One significant remark made by Mr. Carr may serve us, that John Kinnegar, Jr., has been acting as the agent for his father, he had been doing his father's business; he had been paying bills like this for his father; he had been buying things for him, paying out money, and undoubtedly when a man acts as agent, the person for whom he is

acting pays him to do it and gives him the money with which to do it.''

This was simply an admission that appellant had paid the one hundred dollars but falls far short of an admission that the estate was liable to claimant for the amount paid. Besides the attorney was appointed under the statute to defend against said claim, and not to admit it. Marshall v. Adams, 11 Ill. 37; Horner's Probate Law, Second Edition, Chapter 14, paragraph 251.

The remaining item for lines and bits, the evidence shows was purchased and paid for by claimant, from W. H. Kelly in Ottawa. Otto Grabot, who worked for claimant, testified that claimant brought them home in July, 1909, and he next saw them after that on John D. Kinnegar's horses, about a week or so afterwards, and after that he saw them pretty nearly every day being used on the old gentleman's horses. Cross-examination. ''They are out at John J. Kinnegar's now.'' Re-direct, ''John J. Kinnegar bought them at the public sale of John D. Kinnegar's property and brought them down to John J. Kinnegar's house after the sale.'' Re-cross examination, ''Samuel Bute bought them at the sale, so John J. Kinnegar said.'' Defendant offered the sale bill in evidence, as stated, to show that no lines and bits were reported sold at the sale, and that said report did not show that Samuel Bute purchased anything at that sale. Claimant objected and it was sustained. We think the sale bill should have been admitted. It was made by the claimant pursuant to the requirements of the statute and his oath. These articles may have been bought from Kelly with the money of deceased. Claimant may have given them to his father. The proof did not show that deceased owed appellant for them. Finding no reversible error in the record the judgment of the Circuit Court is affirmed.

*Affirmed.*